1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11 AUGUSTINE PEREZ,              ) Case No. EDCV 14-2626-JPR
                                 )
12              Plaintiff,        )
                                 ) **MEMORANDUM OPINION AND ORDER**
13        v.                      ) **REVERSING COMMISSIONER**
                                 )
14 CAROLYN W. COLVIN, Acting      )
   Commissioner of Social        )
15 Security,                      )
                                 )
16              Defendant.        )
   _____       )

17

18 **I.    PROCEEDINGS**

19       Plaintiff seeks review of the Commissioner's final decision

20 denying his application for Social Security disability insurance

21 benefits ("DIB").  The parties consented to the jurisdiction of

22 the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).

23 The matter is before the Court on the parties' Joint Stipulation,

24 filed October 6, 2015, which the Court has taken under submission

25 without oral argument.  For the reasons stated below, the

26 Commissioner's decision is reversed and this matter is remanded

27 for further administrative proceedings.

28

                                   1

**II.   BACKGROUND**

Plaintiff was born in 1960.  (Administrative Record ("AR") 157.)  He has a limited education, is able to communicate in English, and worked as a glazier.  (AR 23, 54, 157.)

On November 9, 2011, Plaintiff submitted an application for DIB, alleging that he had been unable to work since March 23, 2011, because of heart, right-shoulder, and knee problems; right-wrist carpal-tunnel syndrome and arthritis; right-ankle tendinitis; anxiety; borderline hypertension; osteoporosis; chronic headaches and migraines; and muscle spasms in his legs.  (AR 172.)  After his application was denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge.  (AR 90, 98, 104.)  A hearing was held on June 25, 2013, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert.  (AR 30-64.)  In a written decision issued August 30, 2013, the ALJ found Plaintiff not disabled.  (AR 13-24.)  On November 18, 2014, the Appeals Council denied Plaintiff's request for review.  (AR 1.)  This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at

401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

It is more than a scintilla but less than a preponderance.

Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.

Admin., 466 F.3d 880, 882 (9th Cir. 2006)).   To determine whether

substantial evidence supports a finding, the reviewing court

"must review the administrative record as a whole, weighing both

the evidence that supports and the evidence that detracts from

the Commissioner's conclusion."   Reddick v. Chater, 157 F.3d 715,

720 (9th Cir. 1996).   "If the evidence can reasonably support

either affirming or reversing," the reviewing court "may not

substitute its judgment" for the Commissioner's.   Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social

Security benefits if they are unable to engage in any substantial

gainful activity owing to a physical or mental impairment that is

expected to result in death or has lasted, or is expected to

last, for a continuous period of at least 12 months.   42 U.S.C.

§ 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step evaluation process to assess

whether a claimant is disabled.   20 C.F.R. § 404.1520(a)(4);

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as

amended Apr. 9, 1996).   In the first step, the Commissioner must

determine whether the claimant is currently engaged in

substantial gainful activity; if so, the claimant is not disabled

and the claim must be denied.   § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful

3

1  activity, the second step requires the Commissioner to determine
2  whether he has a "severe" impairment or combination of
3  impairments significantly limiting his ability to do basic work
4  activities; if not, the claimant is not disabled and his claim
5  must be denied.  § 404.1520(a)(4)(ii).

6      If the claimant has a "severe" impairment or combination of
7  impairments, the third step requires the Commissioner to
8  determine whether the impairment or combination of impairments
9  meets or equals an impairment in the Listing of Impairments
10 ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix
11 1; if so, disability is conclusively presumed.
12 § 404.1520(a)(4)(iii).

13     If the claimant's impairment or combination of impairments
14 does not meet or equal an impairment in the Listing, the fourth
15 step requires the Commissioner to determine whether the claimant
16 has sufficient residual functional capacity ("RFC")[1] to perform
17 his past work; if so, he is not disabled and the claim must be
18 denied.  § 404.1520(a)(4)(iv).  The claimant has the burden of
19 proving he is unable to perform past relevant work.  Drouin, 966
20 F.2d at 1257.  If the claimant meets that burden, a prima facie
21 case of disability is established.  Id.

22     If that happens or if the claimant has no past relevant
23 work, the Commissioner then bears the burden of establishing that
24 the claimant is not disabled because he can perform other
25 substantial gainful work available in the national economy.

26

27     [1] RFC is what a claimant can do despite existing exertional
   and nonexertional limitations.  § 404.1545; see Cooper v.
28 Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

1  § 404.1520(a)(4)(v); <u>Drouin</u>, 966 F.2d at 1257.  That

2  determination comprises the fifth and final step in the

3  sequential analysis.  § 404.1520(a)(4)(v); <u>Lester</u>, 81 F.3d at 828

4  n.5; <u>Drouin</u>, 966 F.2d at 1257.

5        B.   <u>The ALJ's Application of the Five-Step Procedure</u>

6        At step one, the ALJ found that Plaintiff had not engaged in

7  substantial gainful activity since March 23, 2011, his alleged

8  onset date.  (AR 15.)  At step two, she concluded that Plaintiff

9  had the severe impairments of coronary artery disease, chronic

10 obstructive pulmonary disease, anxiety, depression, lumbar- and

11 cervical-spine limitations, right-rotator-cuff tear, history of

12 bilateral carpal-tunnel release surgery, fibromyalgia, bilateral

13 knee arthritis, and right-ankle tendinitis.  (<u>Id.</u>)  At step

14 three, she determined that Plaintiff's impairments did not meet

15 or equal any of the impairments in the Listing.  (<u>Id.</u>)  At step

16 four, she found that Plaintiff had the RFC to perform a range of

17 light work with additional limitations.  (AR 16-17.)

18 Specifically, Plaintiff could lift and carry 20 pounds

19 occasionally and 10 pounds frequently; stand or walk two hours of

20 an eight-hour workday with regular breaks; sit six hours of an

21 eight-hour workday with regular breaks; push or pull without

22 restriction other than as indicated for lifting and carrying;

23 climb ramps and stairs occasionally; balance, stoop, kneel, and

24 crouch occasionally; reach overhead with the right upper

25 extremity occasionally; be exposed to extreme cold occasionally;

26 work around moving, hazardous machinery occasionally; work at

27 unprotected heights occasionally; understand and carry out simple

28 instructions; make judgments on simple work-related decisions;

interact appropriately with supervisors and coworkers in a
routine work setting; and respond to usual work situations and
changes in a routine work setting (AR 17); but Plaintiff could
never climb ladders, ropes, or scaffolds; was limited to rare
exposure to environmental irritants such as fumes, odors, dusts,
and gases; and was restricted to only superficial interaction
with the public (id.).

The ALJ concluded that Plaintiff was not capable of
performing his past relevant work. (AR 22.) At step five,
relying on the vocational expert's testimony, she found that
Plaintiff could perform jobs existing in significant numbers in
the national economy. (AR 23-24.) Accordingly, the ALJ found
Plaintiff not disabled. (AR 24.)

**V.   DISCUSSION**

Plaintiff claims that the ALJ erred in (1) rejecting his
subjective complaints and the third-party statement of his wife
and in (2) finding him capable of performing other work. (J.
Stip. at 4.) Because the Court agrees with Plaintiff that the
ALJ did not properly assess his credibility, it does not reach
his other contentions.

A.   The ALJ Did Not Give Clear and Convincing Reasons for
Finding Plaintiff Only Partially Credible

1.   Applicable law

An ALJ's assessment of symptom severity and claimant
credibility is entitled to "great weight." See Weetman v.
Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (as amended); Nyman v.
Heckler, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24,
1986). "[T]he ALJ is not required to believe every allegation of

6

disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (citation omitted). If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original).

If the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if she makes specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). The ALJ may consider, among other factors, (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek

treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties. <u>Rounds v. Comm'r Soc. Sec. Admin.</u>, 807 F.3d 996, 1006 (9th Cir. 2015) (as amended); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." <u>Thomas</u>, 278 F.3d at 959.

### 2. Relevant background

In a function report dated December 2011, Plaintiff wrote that he had shortness of breath and pain throughout his body, including his joints, right shoulder, right arm, wrists, knees, and right ankle. (AR 200-04.) He could lift 10 pounds with his right arm and walk 50 yards. (AR 204.) He had trouble standing, raising his right hand above his head, and putting on his clothes. (AR 200, 204.) He also had problems with sleep, memory, attention, stress, changes in routine, and completing things he started. (AR 200, 204-05.) Plaintiff's activities included taking out the trash once a week, supervising family members performing yard work, going outside, and grocery shopping with his wife once a week. (AR 201-02.) He used a cane and was able to drive short distances. (AR 202, 204.)

At the hearing, in June 2013, Plaintiff testified that he had a torn rotator cuff in his right shoulder, torn ligaments in his right ankle, a history of carpal-tunnel release and knee surgeries, low-back pain, shortness of breath, migraine headaches, and side effects from his medications. (AR 33, 38, 45, 47, 51.) He claimed he could lift 10 pounds with his left

arm and less than that with his right, walk for 20 minutes using
a cane, and stand for 15 minutes, but he could not lift his right
arm above his shoulder and had pain when sitting in an upright
position.  (AR 33, 45-46, 48.)  He had swelling in his wrists,
numbness in his hands, and tightness in his fingers, which made
it difficult to write, button his clothing, or use a screwdriver.
(AR 34-35.)  Plaintiff stated that his doctor recommended surgery
for his shoulder and neck, but he was waiting for approval on an
MRI.  (AR 36-37.)  He had received mental-health treatment on
only two occasions but thought he should resume treatment because
he was feeling depressed over a recent separation from his wife.
(AR 37-39.)  He was taking anxiety medication prescribed by his
primary-care physician.  (Id.)  Plaintiff testified that his
brother helped with transportation, grocery shopping, laundry,
and cleaning up after Plaintiff's dogs.  (AR 41-42.)

### 3.   Analysis

     The ALJ found Plaintiff's "statements concerning the
intensity, persistence and limiting effects of [his] symptoms"
not credible to the extent they were inconsistent with the RFC.
(AR 19.)  She specifically identified Plaintiff's testimony that
"he remains quite immobile due to his physical limitations" as
being not credible.  (AR 18.)  The ALJ provided three reasons to
support the adverse credibility determination.

     First, the ALJ found Plaintiff's testimony not credible
because his allegations regarding the severity of his symptoms
and limitations "are greater than expected in light of the
objective evidence of record."  (AR 19.)  The ALJ suggested that
Plaintiff's "limited daily activities is a lifestyle choice and

not due to any established impairment." (AR 18.) Because Plaintiff produced medical evidence of underlying impairments that could reasonably be expected to produce his symptoms, the lack of objective medical evidence corroborating Plaintiff's subjective symptom testimony could not alone support the ALJ's adverse credibility finding. See Robbins, 466 F.3d at 883 (explaining that ALJ may not make negative credibility finding "solely because" claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence"); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (stating that ALJ may consider "lack of medical evidence" as factor in credibility analysis, but it "cannot form the sole basis for discounting pain testimony").

Plaintiff's medical records established severe impairments associated with significant restrictions. For example, an electrocardiography report showed Plaintiff's left ventricular function was severely impaired, with an ejection fraction between 20 and 25 percent (AR 19, 261-62), and Plaintiff's doctors noted a systolic heart murmur and shortness of breath with exertion (AR 20, 235, 236, 249, 251, 264, 280, 328, 331, 416). Plaintiff was diagnosed with congestive heart failure, coronary artery disease, and chronic obstructive pulmonary disease. (AR 15, 244, 247, 248, 249, 256, 329, 331, 332, 396, 405.) Plaintiff was also hospitalized because of chest pains and shortness of breath at least once after his alleged onset date. (AR 19, 248, 292, 327.)

With respect to Plaintiff's right shoulder, an MRI showed a rotator-cuff tear with full thickness tear of the anterior portion of the supraspinatus tendon, with mild retraction of the

tendon and mild atrophy of the supraspinatus muscle.  (AR 20,
229, 231, 395-96.)   On examination, Plaintiff's doctors noted
reduced range of motion, diminished strength, and increased pain
with activity.  (AR 20, 231, 232, 317, 410.)   Surgical repair of
the rotator cuff was recommended.  (AR 231-32.)   Plaintiff also
had tenderness and osteoarthritis in the knees (AR 15, 244, 249,
332, 410), ambulated with a limp, and used a cane (AR 20, 251,
410, 413).   An MRI of Plaintiff's right ankle showed enlargement
and abnormal signal of a segment of the peroneus brevis tendon,
reflecting degeneration or a partial tear.  (AR 19, 239.)   An x-
ray of Plaintiff's pelvis confirmed bilateral degenerative joint
disease (AR 378-79), and an x-ray of his lumbar spine showed
multilevel discogenic disease and lumbar spondylosis (AR 20,
382).   Thus, the absence of corroborating objective evidence was
an insufficient reason for the ALJ to find Plaintiff's subjective
symptom testimony less than fully credible, even were it in
conjunction with another, permissible basis for finding him not
credible.   But as explained below, it was not.

     The ALJ also found that Plaintiff's "failure to seek
treatment from a mental health expert is inconsistent with the
alleged severity of his alleged symptoms and functional
limitations." (AR 18.)   The ALJ noted that although Plaintiff
reported a history of depression and anxiety, he had only a few
appointments at Riverside County Mental Health and had not been
treated by a psychiatrist or hospitalized for psychiatric
treatment.  (Id.)   However, the medical record shows that
Plaintiff was repeatedly diagnosed with anxiety and was taking
mental-health medications prescribed by his doctors, including

Effexor, Paxil, Xanax, and Cymbalta. (AR 243, 245, 256, 323, 324, 328, 331, 336, 411.) General practitioners and primary-care physicians often treat mental illnesses. See Spraque v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) ("[I]t is well established that primary care physicians (those in family or general practice) 'identify and treat the majority of Americans' psychiatric disorders.'" (citation omitted)); Gutierrez v. Astrue, No. 1:09CV0146 DLB, 2010 WL 729007, at *10 (E.D. Cal. Mar. 1, 2010) (when plaintiff took psychotropic medication prescribed by family practitioner, fact that claimant was "not being followed by a psychologist or a psychiatrist" failed to support ALJ's rejection of claimant's credibility).

Moreover, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted); Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1299-300 (9th Cir. 1999) (noting that mental illness is "notoriously underreported"). Here, the medical record shows that Plaintiff apparently attempted suicide in June 2012 and was experiencing increased depression at the time of the hearing because he had separated from his wife. (AR 20, 39, 337.) That Plaintiff may have lacked the requisite insight into his condition to seek out regular mental-health treatment may in fact indicate the seriousness of his condition. See Nguyen, 100 F.3d at 1465; Rosas v. Colvin, No. CV 13-2756-SP, 2014 WL 3736531, at *11 (C.D. Cal. July 28, 2014) (claimant's limited treatment for mental illness not by itself clear and convincing reason for rejecting his credibility).

1    Finally, the ALJ found that Plaintiff "received routine,
2    conservative, and non-emergency treatment since the alleged onset
3    date" for his physical and mental impairments.  (AR 19.)
4    Conservative treatment can legitimately discredit a claimant's
5    testimony.  See Parra, 481 F.3d at 751.  Here, however, the ALJ's
6    finding of conservative treatment was not supported by the
7    record.  Plaintiff was consistently treated with a variety of
8    medications during the period of his alleged disability,
9    including a narcotic pain medication (Ultram (tramadol)).  (AR
10   222, 226, 244, 246, 250, 269, 274, 287, 323, 411.)  He also
11   received steroid injections to treat neck and shoulder pain.  (AR
12   50, 394, 403.)  Characterization of such treatment as
13   "conservative" may be inaccurate.  See, e.g., Aguilar v. Colvin,
14   No. CV 13-08307-VBK, 2014 WL 3557308, at *8 (C.D. Cal. July 18,
15   2014) ("It would be difficult to fault Plaintiff for overly
16   conservative treatment when he has been prescribed strong
17   narcotic pain medications."); Yang v. Colvin, No. CV 14-2138-PLA,
18   2015 WL 248056, at *6 (C.D. Cal. Jan. 20, 2015) (finding that
19   spinal epidural injections are not conservative treatment).
20   Moreover, the record shows that the treatment he was
21   prescribed failed to alleviate his symptoms and pain.  (See AR 20
22   (ALJ noting that "[p]hysical therapy did not result in any
23   significant improvement"), 251, 393, 395, 403, 409.)  The record
24   also shows that Plaintiff's physicians recommended surgery to
25   repair the torn rotator cuff in his right shoulder.  (AR 227,
26   231, 232, 344.)  Plaintiff had not yet undergone the surgery at
27   the time of the hearing because he was awaiting approval for an
28   MRI (AR 36-37, 408, 410), but given that it had been prescribed

13

1  his failure to yet have it was not a valid reason for discounting
2  his credibility.  Cf. Orn v. Astrue, 495 F.3d 625, 638 (9th Cir.
3  2007) (adverse credibility finding not supported by failure to
4  obtain treatment due to lack of funds).  And the ALJ failed to
5  identify any other treatment that was currently recommended or
6  available for Plaintiff's impairments or point to anything in the
7  record to show that any more aggressive treatment than the
8  treatment Plaintiff was already receiving was a standard method
9  for treating the conditions causing the type of physical and
10 mental limitations alleged by Plaintiff.  The ALJ cannot fault
11 Plaintiff for failing to pursue nonconservative treatment options
12 if none existed.  See Lapeirre–Gutt v. Astrue, 382 F. App'x 662,
13 664 (9th Cir. 2010).  Under these circumstances, Plaintiff's
14 treatment history was not a clear and convincing reason for the
15 ALJ's adverse credibility finding.

16      In sum, the ALJ's explanation for the adverse credibility
17 determination was insufficient.

18      B.   Remand for Further Proceedings Is Appropriate

19      When, as here, an ALJ errs in denying benefits, the Court
20 generally has discretion to remand for further proceedings.  See
21 Harman v. Apfel, 211 F.3d 1172, 1175–78 (9th Cir. 2000).  When no
22 useful purpose would be served by further administrative
23 proceedings, however, or when the record has been fully
24 developed, it is appropriate under the "credit-as-true" rule to
25 direct an immediate award of benefits.  See id. at 1179 (noting
26 that "the decision of whether to remand for further proceedings
27 turns upon the likely utility of such proceedings"); Garrison v.
28 Colvin, 759 F.3d 995, 1019-20 (9th Cir. 2014).

1    Under the credit-as-true framework, three circumstances must
2  be present before the Court may remand to the ALJ with
3  instructions to award benefits:

4       (1) the record has been fully developed and further
5       administrative proceedings would serve no useful purpose;
6       (2) the ALJ has failed to provide legally sufficient
7       reasons for rejecting evidence, whether claimant
8       testimony or medical opinion; and (3) if the improperly
9       discredited evidence were credited as true, the ALJ would
10      be required to find the claimant disabled on remand.

11 Id. at 1020.  When, however, the ALJ's findings are so
12 "insufficient" that the Court cannot determine whether the
13 rejected testimony should be credited as true, the Court has
14 "some flexibility" in applying the credit-as-true rule.  Connett
15 v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); see also
16 Garrison, 759 F.3d at 1020 (noting that Connett established that
17 credit-as-true rule may not be dispositive in all cases).

18      Here, remand for further proceedings is appropriate.  It may
19 be that the ALJ had adequate reasons not to find Plaintiff
20 entirely credible and simply failed to express them; her findings
21 are insufficient to enable the Court to tell.  Further, on
22 remand, the ALJ will have the opportunity to explain more fully
23 the assessment of the third-party statement provided by
24 Plaintiff's wife and can consider any inconsistency between
25 Plaintiff's RFC and the vocational expert's testimony.

26
27
28

                              15

1  **VI.   CONCLUSION**

2       Consistent with the foregoing, and under sentence four of 42

3  U.S.C. § 405(g),[2] IT IS ORDERED that judgment be entered

4  REVERSING the decision of the Commissioner, GRANTING Plaintiff's

5  request for remand, and REMANDING this action for further

6  proceedings consistent with this Memorandum Opinion.  IT IS

7  FURTHER ORDERED that the Clerk serve copies of this Order and the

8  Judgment on counsel for both parties.

9

10  DATED: March 31, 2016

    JEAN ROSENBLUTH
11                                    U.S. Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26       [2]    That sentence provides: "The [district] court shall
    have power to enter, upon the pleadings and transcript of the
27  record, a judgment affirming, modifying, or reversing the
    decision of the Commissioner of Social Security, with or without
28  remanding the cause for a rehearing."

16